# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ROGER KINNUNEN, on behalf of himself and all others similarly situated, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FORD MOTOR COMPANY, | ) |
| | ) |
| Defendant. | ) |

Case No.:

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Roger Kinnunen brings this action against Defendant Ford Motor Company ("Defendant" or "Ford"), by and through his attorneys, individually and on behalf of all others similarly situated, and alleges as follows:

## I. <u>INTRODUCTION</u>

1.    This is a class action lawsuit brought by Plaintiff on behalf of himself and a class of current and former owners and lessees of certain Ford and Lincoln vehicles (the "Class Vehicles")[1] that were sold with defective door latch systems.

2.    This action arises from Defendant's failure, despite its longstanding knowledge of a material design and manufacturing defect, to disclose to Plaintiff and other consumers that the Class Vehicles are predisposed to premature and inevitable door sensor failure (the "Door Latch Defect").  This defect – that begins with the contamination of the electrical contacts on the door sensor – will inevitably cause the door sensors in the Class Vehicles (housed within the door latch assemblies) to fail.  Once the door sensors cease operating properly, the door latching mechanism(s) and door locking system fail to function as intended and

---

[1] Upon information and belief, the Class Vehicles include the following model years ("MY"):  2011-2014 Ford Edge; 2011-2015 Lincoln MKX; 2013 Ford Flex; and 2013 Lincoln MKT.  Plaintiff reserves the right to amend or add to the vehicle models and model years included in the definition of Class Vehicles after conducting discovery.

expected.   As a result, the door latch assemblies must be replaced, resulting in costly repairs that fail to remedy the root cause of the Door Latch Defect.

3.     Significantly, when the Door Latch Defect occurs it poses a safety risk to the operator and passengers of the vehicle since the door latch system fails to operate correctly.   In some instances, single or multiple doors on the Class Vehicles may not lock at any time, whether the vehicle is turned on or off, despite necessary commands by the operator.   This jeopardizes the safety of the Class Vehicle occupants by making them more vulnerable to potential crime, including theft, unintentional door openings during operation and other risks that could have otherwise been avoided.   The Door Latch Defect poses a particular risk to young children occupying the rear seat since the child door lock safety features can become inoperable when the Door Latch Defect manifests.[2]   Furthermore, if this condition continues when the vehicle is turned off, it can completely drain the vehicle's battery and leave the vehicle operator stranded.

4.     Not only did Ford actively conceal the fact that particular components within the door latch system do not function as needed to reduce contamination in order to minimize door sensor failure, Ford also did not properly advise class members that the components within the door latch system are defective (and

---

[2] According to reports received by NHTSA for the 2011-2013 Ford Edge, twelve of fourteen "door opening" events were situations where an occupant of the vehicle (often a child) opened a passenger door because the doors were not locked due to the Door Latch Defect.

require costly repairs to fix), and that the existence of this defect would diminish the intrinsic and resale value of the Class Vehicles and lead to the safety concerns described within.

5.      Ford has long been aware of the Door Latch Defect.   Yet notwithstanding its longstanding knowledge of this defect, Ford has routinely refused to repair the Class Vehicles without charge when the defect manifests.

6.      Many other owners and lessees of Class Vehicles have communicated with Defendant's agents to request that they remedy and/or address the Door Latch Defect and/or resultant damage at no expense.  Defendant has failed and/or refused to do so.

7.      For customers with vehicles within the warranty periods at issue, Ford has done nothing more than to temporarily repair the Door Latch Defect, or replace it with other similarly defective and inherently failure-prone door latch assemblies. Ford has refused to take any action to correct the root cause of this concealed defect when it manifests in vehicles both in and outside the warranty period.  Since the Door Latch Defect typically manifests within and shortly outside of the warranty period for the Class Vehicles – and given Defendant's knowledge of this concealed, safety related design defect – Ford's attempt to limit the applicable warranties with respect to the Door Latch Defect is unconscionable.

8.      Despite notice and knowledge of the Door Latch Defect from the

numerous consumer complaints it has received, information received from dealers, National Highway Traffic Safety Administration ("NHTSA") complaints, and its own internal records, including similar door latch part failures in prior model year vehicles, Ford has not recalled the Class Vehicles to repair the Door Latch Defect, offered its customers a suitable repair or replacement free of charge, or offered to reimburse its customers who have incurred out of pocket expenses to repair the defect.

9.      As a result of Defendant's unfair, deceptive and/or fraudulent business practices, owners and/or lessees of class vehicles, including Plaintiff Roger Kinnunen, have suffered an ascertainable loss of money and/or property and/or loss in value.  The unfair and deceptive trade practices committed by Defendant were conducted in a manner giving rise to substantial aggravating circumstances.

10.     Had Plaintiff and other Class members known about the Door Latch Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicle, or would have paid substantially less for it.

11.     As a result of the Door Latch Defect and the monetary costs associated with attempting to repair such defect, Plaintiff and Class members have suffered injury in fact, incurred damages and have otherwise been harmed by Ford's conduct.

12.     Accordingly, Plaintiff brings this action to redress Defendant's

violations of the Michigan consumer fraud statute and also seeks recovery for Ford's breach of express warranty, breach of the covenant of good faith and fair dealing and common law fraud.

## II.   JURISDICTION AND VENUE

13.   This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and (d) because the amount in controversy exceeds for the Class $5,000,000 and other putative class members are citizens of a different state than Defendant.

14.   This Court has personal jurisdiction over Plaintiff Roger Kinnunen because he submits to the Court's personal jurisdiction.  This Court has personal jurisdiction over Defendant Ford Motor Company, because it conducted and continues to conduct substantial business in the District; its corporate headquarters is located in the district; and because it has committed the acts and omissions complained of herein in the District, including the marketing, selling, and leasing of Class Vehicles in the District.

15.   Venue as to Defendant is proper in this judicial district under 28 U.S.C § 1391 because Defendant sells a substantial number of automobiles in this District, has dealerships in this District, maintains its corporate headquarters within this District, and many of Defendant's acts complained of herein occurred within

this District, including the marketing and leasing of the Class Vehicles to Plaintiff and members of the putative Class in this District.

## III.   PARTIES

### A.   Plaintiff Kinnunen

16.   Plaintiff Kinnunen ("Kinnunen") is a citizen of the State of Michigan, residing in Ishpeming, Michigan, 49849.

17.   In or around July 18, 2011, Plaintiff Kinnunen purchased a new 2011 Ford Edge from Suburban Ford of Sterling Heights, an authorized Ford dealer and repair center located in Sterling Heights, Michigan.

18.   Plaintiff Kinnunen purchased (and still owns) this vehicle, which is used for personal, family and/or household uses.   His vehicle bears Vehicle Identification Number: 2FMDK3GCXBBB40891.

19.   In or around October 2012, Plaintiff Kinnunen experienced a "Door Ajar" warning light on his instrument cluster.   He presented his vehicle to Fox Marquette, an authorized Ford dealer and repair center in Marquette, Michigan. The technician verified that the door ajar light came on intermittently.   As a result, a special order was placed for the driver's door latch assembly so that it could be replaced in Plaintiff's vehicle.

20.   In or around February 2015, Plaintiff Kinnunen again experienced a "Door Ajar" warning light on his instrument cluster and notified Fox Marquette.

In May 2015, he again presented his vehicle to Fox Marquette where the technician verified Plaintiff Kinnunen's concern.  The technician determined that TSB 15-0013 applied (described in detail below), removed the driver door latch from the vehicle and thereafter cycled the latch per the TSB.

21.    In or around February 2016, Plaintiff Kinnunen again experienced a "Door Ajar" warning light on his instrument cluster.  Plaintiff first contacted Fox Marquette and was told that he would have to pay out-of-pocket for a replacement door latch assembly since, as Fox Marquette explained, TSB 15-0013 had already been performed and it could not be performed again.  As a result, in September 2016, Plaintiff took his vehicle to Bartanens Auto Body, a third-party repair facility, where the driver door latch assembly was replaced at a cost of $206.91.

22.    Plaintiff Kinnunen has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Door Latch Defect, including, but not limited to, out of pocket loss associated with the Door Latch Defect and future attempted repairs and diminished value of his vehicle.

23.    None of the Defendants, or any of their agents, dealers or other representatives informed Plaintiff of the existence of the Door Latch Defect prior to purchase or at the time of attempted repairs relating to the issue.

## B.    Defendant

24.    Defendant Ford is a corporation formed under Delaware law with its principal office located at One American Drive, Dearborn, Michigan 48126. Defendant designs, tests, manufactures, distributes, warrants, sells, and leases various vehicles under several prominent brand names, including Ford and Lincoln in this District and throughout the United States.

## IV.    TOLLING OF STATUTES OF LIMITATION

25.    Any applicable statute(s) of limitations has been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein.  Plaintiff and members of the Class could not have reasonably discovered the true, latent defective nature of the Door Latch Defect until shortly before this class action litigation was commenced.

26.    Defendant Ford was and remains under a continuing duty to disclose to Plaintiff and members of the Class the true character, quality and nature of the Class Vehicles, that this defect is based on poor design and manufacturing, and that it will require continued costly repairs, poses a safety concern, and diminishes the resale value of the Class Vehicles.   As a result of the active concealment by Defendant, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## V.    FACTUAL ALLEGATIONS

A.    __The Door Latch Defect within the Class Vehicles.__

27.    The Ford Edge is a mid-sized crossover Sport Utility Vehicle ("SUV") manufactured by Defendant.  The Ford Edge model was first made available in October 2006 as a 2007 model year.

28.    The Ford Edge is also rebadged and marketed as the Lincoln MKX, a premium alternative to the Ford Edge.  Both vehicles utilize the same Ford platform known as the "CD3" and share many of the same components and parts.

29.    The Ford Flex is a full-sized crossover Sport Utility Vehicle manufactured by Defendant.  The Ford Flex model was first made available as a 2009 model year.

30.    The Ford Flex is also rebadged and marketed as the Lincoln MKT, a premium alternative to the Ford Flex.  Both vehicles utilize the same Ford platform known as the "D4" and share many of the same components and parts.

31.    The Edge and MKX models were available in various trim levels known as "SE", "SEL", "Limited" and "Sport".  The Flex and MKT models were available in "SE", "SEL" and "Limited" trim levels.  Regardless of the trim level, all of the Class Vehicles were marketed and sold with power door latching systems as standard equipment.

32.    Power door latches (also known as electronic door locks or central locking) allow the driver or front passenger to simultaneously lock or unlock all of

the passenger doors of an automobile or truck, through use of an interior lock/unlock button or switch, an exterior manual locking mechanism, and/or a wireless key fob.  Additionally, many modern vehicles are pre-programmed to utilize the electronic door latching system to engage safety features such as locking the doors when a vehicle reaches a certain speed and unlocking the doors if the vehicle is turned off or determined to have been in an accident.

33.     The components of the power door latching system in the Class Vehicles include, *inter alia*, a door latch assembly, electronic switches, a central communication brain, metal rods, and cables.  In the Class Vehicles, the door latch assemblies will mechanically lock and unlock the door latches, thereby allowing the doors to be open or closed, based upon the electrical signals that are sent to it. The picture below illustrates the interior door components comprising the door latching system in the Class Vehicles.  Specifically, figure number "10" identifies the door latch assembly at issue.



34.     The picture below illustrates another view of the interior door components comprising the power door latching system in the Class Vehicles. Specifically, figure number "11" identifies the door latch assembly.



35.     In addition, most modern vehicles utilize a door switch or door sensor mounted on the vehicle body area behind the passenger door, also known as the door jamb.  These sensors are typically spring loaded plunger style switches that move in and out depending on whether the passenger door is in the opened or closed position.  When the plunger switch moves in and out, the electrical contacts within the switch simultaneously open or close an electrical circuit.  The opening and closing of this electrical circuit can coincide with many other features such as turning the interior dome lights on or off, arming, disarming or triggering the vehicle alarm, and allowing or not allowing the vehicle doors to engage in the locked position.  The picture below exemplifies a typical door sensor mounted on the inside body or door jamb of a modern vehicle.



36.     Unlike other vehicles, the Class Vehicles do not have door sensors located on the door jamb of the vehicle.  Instead, the door sensors are part of the

door latch assembly, located inside the passenger doors of the Class Vehicles.  As a result, the door latch and door sensors in the Class Vehicles are manufactured, housed, sold, serviced and repaired as one collective piece.  Therefore, when the door sensor fails and necessitates replacement, the entire door latch assembly must also be replaced.  The below picture illustrates the door latch assembly (including door sensor) contained in the Class Vehicles.



37.    In the Class Vehicles, the opening and closing of the electrical circuit by the door sensor sends electrical signals to other components of the vehicle, including the Body Control Module ("BCM"), to communicate that the passenger doors on the vehicle are either opened or closed.  If the door sensor communicates that a passenger door is not adequately closed then the vehicle's interior dome light will continuously illuminate, the door chime will sound, the alarm system will not function properly and the "door ajar" indicator light, located in the instrument

cluster, will illuminate.  Additionally, the vehicle doors will not lock, while both parked and driven, and the child safety lock feature on the rear passenger doors will not function as intended.  Furthermore, if this condition continues when the vehicle is turned off, it can completely drain the vehicle's battery and leave the vehicle operator stranded.

38.     The picture below illustrates that the door latch assembly (including door sensor) communicates only with the Body Control Module ("BCM") in the Class Vehicles.  The BCM is a major module that handles multiple tasks including, *inter alia*, lighting, climate control, keyless entry, anti-theft duties and managing communications between other modules.



39.     Power door latch systems are designed to function for periods (and

mileages) substantially in excess of those specified in Defendant's warranties, and given past experience, consumers legitimately expect to enjoy the use of an automobile without worry that the door latch systems will fail for significantly longer than the limited times and mileages identified in Defendant's warranties.

40.     Automobiles must incorporate designs that are able to withstand foreseeable usage conditions such as opening and closing doors, as well as, locking and unlocking the doors electronically.  A vehicle can suffer extensive damage and costly repairs from customary environmental and usage conditions when the vehicle contains a defect.

41.     The Class Vehicles were manufactured with insufficient and defective door latch systems.  This defect renders the Class Vehicles prone to premature door sensor failure.  Once the door sensors cease operating properly, the door latch assemblies and door latching system fail to function as intended and expected.  As a result, the door latch assemblies must be replaced.  As explained above, the Door Latch Defect poses serious safety and security issues for operators and occupants of the Class Vehicles.

42.     In many instances, consumers have incurred and will continue to incur expenses for the continued repair and/or replacement of the defective door latch assemblies despite such defect having been contained in the Class Vehicles when manufactured by Defendants.

43.     Upon information and belief, Defendants, through (1) their own records of customers' complaints, (2) dealership repair records, (3) records from and to the National Highway Traffic Safety Administration (NHTSA), (4) warranty and post-warranty claims, (5) door latch and door sensor failure in prior model years, and (5) other various sources, were well aware of the Door Latch Defect but failed to notify customers of the nature and extent of the problems with the Class Vehicle door latch assemblies or provide any adequate remedy.

44.     Defendants failed to adequately research, design, test and/or manufacture the electronic door latch system before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in an intended and/or reasonably foreseeable manner.

45.     Buyers, lessees, and other owners of the affected vehicles were without access to the information concealed by Defendants as described herein, and therefore reasonably relied on Defendant's representations and warranties regarding the quality, durability, and other material characteristics of their vehicles. Had these buyers and lessees known of the defect and the potential danger, they would have taken steps to avoid that danger and/or would have paid less for their vehicles than the amounts they actually paid, or would not have purchased the vehicles.

**B.**    <u>**Ford's Knowledge of the Defective Door Latch System**</u>

46.    Ford is aware that many customers with Edge, MKX, MKT and Flex vehicles of prior model years (before the Class Vehicles) experienced door sensor failure and door latch assembly replacement.  Regardless, it did nothing to correct the problem in those later models, i.e. the Class Vehicles.  Instead, Ford simply seeks to burden class members with its failure while also reaping the benefit of profits from costly repairs paid for by class members.

47.    Ford is, and has been, aware that the Door Latch Defect in the Class Vehicles is caused by the contamination of the electrical contacts on the door sensor switch located within the door latch assembly.  All doors on the Class Vehicle contain the same door latch design and door sensor switch.

48.    According to Ford, the BCM monitors the position of the door sensor switch and continuously samples it to detect a state of change.  After a closed door state is detected, a continuous wetting electrical current, intended to keep the electrical contacts clean, is sent from the BCM to the door sensors.

49.    Beginning with the 2011 MY of the Class Vehicles, a change by Ford in the BCM strategy resulted in a reduction of the wetting current sent out to clean the door sensor contacts by more than 75%.  This low level of current is not sufficient to keep the door sensor contacts clean as needed.  As a result, there is a buildup of contamination on the contacts causing the door senor to fail and

requiring replacement or the temporary repair (via Ford's TSB) of the door latch assembly.

50.    Ford has not attempted to correctly address the root cause of the Door Latch Defect, i.e. the change in the BCM strategy that results in a reduction of the wetting current.   As a result, any replacement door latch assembly is likewise destined to fail prematurely for the reasons above.   Additionally, any attempted repair to the existing door latch assembly is only temporary and does not remedy the underlying condition that will continue to be repeated.

51.    Ford had, at the time the Class Vehicles were manufactured, and continues to have the capability to address the root cause of the Door Latch Defect through the reprogramming of the BCM strategy as needed to increase the wetting condition and eliminate the contamination resulting in door sensor failure.

52.    Despite such capability, Ford continues to charge class members for attempted repairs and parts to correct the Door Latch Defect when, in fact, Ford knows such repairs and parts do not provide an adequate repair nor do they correct the root cause of the Door Latch Defect.

C.  **Ford's Failed Repair Procedure**

53.  In August 2014, Defendant issued TSB 14-0224 to their authorized dealerships regarding the Door Latch Defect in the Class Vehicles.[3]  TSBs are documents used by automotive manufactures to inform dealership technicians about new information, including vehicle repair problems, vehicle repair procedures, and new products.

54.  In the August 2014 TSB, Defendant acknowledged that the Class Vehicles are defective.  If consumers complained of door ajar symptoms as described above, technicians are instructed to first identify the suspect door using a Ford Integrated Diagnostic System service tool.

55.  Once the suspect door is identified, technicians are instructed to remove the affected door latch from the vehicle.  The removed door latch is then connected to an Essential Special Service Tool 501-408 (also referred to as a Door Latch Cleaner).  This tool is a thermal type device that drives high levels of electrical current across the electrical contacts of the door latch assembly.

56.  The attempted outcome of the above process is intended to clean the electrical contacts within the door latch assembly so that the door sensor will provide accurate communication and the vehicle will not illuminate a false door

---

[3] Ford also issued TSB 14-0224 (dated December 12, 2014) and TSB 15-0013 (dated February 18, 2015) regarding the same issue.

ajar warning light.  However, Ford was aware that this process did not provide an adequate fix to the Door Latch Defect since the BCM wetting condition was not previously remedied.

57.     Instead, Ford sought to avoid much-needed part replacements during the warranty period (such as addressing the BCM wetting condition and replacing the contaminated door latch assemblies) and instead chose a less expensive alternative along with an ineffective repair method for class members.  The process outlined in the above TSB simply provides class members with a band-aid and very temporary solution to the Door Latch Defect.  As a result, Ford attempts to temporarily fix the Door Latch Defect during the warranty period through the TSB knowing full well that it will fail again, often outside of the warranty, at which time Ford recommends that class members replace the entire door latch assembly at a significant cost to vehicle owners and lessees.  This is a recommendation that Ford did not heed and chose to ignore when adopting the TSB.

58.     Ford is experienced in the design and manufacture of consumer vehicles.  As experienced manufactures, Ford likely conducts tests on incoming components, including the door latch system, to verify the parts are free from defect and align with Ford's specifications.  Thus, Ford knew or should have known the door latch system was defective and prone to put drivers in a dangerous position due to the inherent risk of the Door Latch Defect.

59.    Additionally, Defendant should have learned of this widespread defect due to the sheer number of reports received from dealerships.   Defendant's customer relations department, which interacts with individual dealerships to identify potential common defects, has received numerous reports regarding the Door Latch Defect, which led to the release of the TSBs.   Ford's customer relations department also collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

60.    Defendant's warranty department similarly analyzes and collects data submitted by its dealerships in order to identify trends in its vehicles.   It is Defendant's policy that when a repair is made under warranty the dealership must provide Ford with detailed documentation of the problem and the fix employed to correct it.   Dealerships have an incentive to provide detailed information to Defendant, because they will not be reimbursed for any repairs unless the justification is sufficiently detailed.

**D.    Ford's Warranties Related to the Door Latch Defect**

61.    Ford issued two relevant warranties relating to the Door Latch Defect: a "New Vehicle Limited Warranty" and a "Service Parts Warranty."

62.     Under the New Vehicle Limited Warranty, Ford agreed to repair defects reported within the earlier of 3 years or 36,000 miles.  Repairs associated with the Door Latch Defect are included in this warranty.

63.     Ford sells replacement door latch assembly with a warranty period of 24 months/unlimited miles under the Service Parts Warranty.  Ford, however, does not disclose to consumers that the replacement door latch assemblies will suffer premature failure once installed in the Class Vehicles.  Repairs of replacement door latch assemblies, associated with the Door Latch Defect, are included in this warranty.

### E.     Complaints by Other Class Members

64.     Owners and lessees of the Class Vehicles have publicly complained to the United States Government about the Door Latch Defect and the risks to drivers when it manifests.  The Office of Defects Investigation ("ODI") is an office with the NHTSA.  ODI conducts defect investigations and administers safety recalls to support the NHSTSA's mission to improve safety on the nation's highways.  The complaints set forth below are just a small sampling of complaints submitted to the ODI regarding the Class Vehicles.  These publicly available complaints evidence Defendant's prior knowledge of the widespread Door Latch Defect and the potential harm to drivers.

**2011 Ford Edge**

**NHTSA ID Number: 10551957**
**Incident Date October 1, 2013**
**Consumer Location DENTON, TX**
**Vehicle Identification Number 2FMDK3KC7BB****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2011 FORD EDGE. THE CONTACT STATED
THAT THE AUTOMATIC DOOR SYSTEM WAS DEFECTIVE AND WOULD
READ THAT THE DOOR WAS OPEN WHEN IT WAS CLOSED, AND READ
THAT THE DOOR WAS CLOSED WHEN IT WAS OPENED. AS A RESULT,
THE AUTOMATIC DOOR LATCH SYSTEM WOULD NOT ENGAGE. THE
VEHICLE WAS NOT TAKEN TO THE DEALER FOR INSPECTION OR
REPAIRS. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE.
THE FAILURE AND CURRENT MILEAGE WAS 36,000. UPDATED
12/20/*CN

**NHTSA ID Number: 10538531**
**Incident Date August 27, 2013**
**Consumer Location WILLIAMSTON, MI**
**Vehicle Identification Number 2FMDK3JC9BB****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2011 FORD EDGE. THE CONTACT STATED
THAT WHILE ATTEMPTING TO LATCH THE DOORS, THE DOOR
LATCHS FAILED TO STAY LATCH AND UNLATCHED WITHOUT
MANUAL FORCE. THE VEHICLE WAS NOT REPAIRED AND THE
MANUFACTURER WAS NOTIFIED. THE APPROXIMATE FAILURE
MILEAGE WAS 49,000. UPDATED 11/12/13*CN

THE CONSUMER STATED THE DRIVER AJAR LIGHT STAYED ON
CONSTANTLY. THEREFORE, THE DOORS WOULD NOT LATCH. ALSO,
THE INTERIOR LIGHTS REMAINED ON AFTER THE VEHICLE WAS
TURNED OFF. UPDATED 11/19/13

**NHTSA ID Number: 10585758**
**Incident Date February 24, 2014**
**Consumer Location CENTENNIAL, CO**
**Vehicle Identification Number 2FMDK4JC8BB****
**Summary of Complaint**

DRIVERS SIDE DOOR LATCH MECHANISM IS DEFECTIVE. AFTER CLOSING THE DOOR THE SENSOR WHICH DETECTS THE DOOR BEING SHUT IS NOT ACTIVATED PROPERLY. THE INSTRUMENT PANEL INDICATES THAT THE DOOR IS AJAR. THE INTERIOR LIGHTS STAY ON UNTIL THE VEHICLE IS IN MOTION. MOST SERIOUSLY HOWEVER IS THAT WHILE THIS PROBLEM IS OCCURRING, THE VEHICLE DOORS CANNOT BE LATCHED. NONE OF THEM. A CHILD IN THE BACK SEAT COULD EASILY OPEN THE DOORS WHILE THE CAR WAS IN MOTION. EVEN IF THE DRIVER PUSHES THE DOOR LATCH BUTTON TO ENGAGE ALL 4 DOOR LATCHS, THEY POP RIGHT BACK OPEN AFTER A FEW SECONDS. THE REMOTE WILL ALSO NOT ACTIVATE THE SECURITY SYSTEM WHEN YOU ARE OUTSIDE THE VEHICLE. THE HORN CHIRPS TWICE INDICATING THAT THE DOORS ARE AJAR. *JS

**NHTSA ID Number: 10592755**
**Incident Date April 17, 2014**
**Consumer Location ORANGEBURG, SC**
**Vehicle Identification Number 2FMDK3KC9BB****
**Summary of Complaint**
THE DOOR LATCH SWITCH IS FAULTY AND THE DOOR AJAR LIGHT WILL NOT GO OUT ON THE INSTRUMENT PANEL. APPARENTLY FORD REFUSES TO RECALL THE PRODUCT. I BELIEVE THIS COULD LEAD TO A DANGEROUS SITUATION IF THE DOOR IS REALLY AJAR AND THE DOOR COULD OPEN, DRAIN THE BATTERY AND WHEN THE DOOR SWITCH IS MALFUNCTIONING, IT STATES THAT THE DOOR IS AJAR AND THE DOORS WILL NOT LATCH. *TR

**NHTSA ID Number: 10655060**
**Incident Date August 10, 2014**
**Consumer Location AMARILLO, TX**
**Vehicle Identification Number 2FMDK4JC7BB****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2011 FORD EDGE. THE CONTACT STATED THAT THE DOOR AJAR INDICATOR REMAINED ILLUMINATED AND THE AUTOMATIC DOOR LATCH SYSTEM FAILED TO FUNCTION PROPERLY. ALSO, THE CONTACT MENTIONED THAT THE FAILURE CAUSED THE DOME LIGHT TO STAY ILLUMINATED WHILE THE VEHICLE WAS IN MOTION. THE FAILURE OCCURRED DAILY. THE VEHICLE WAS TAKEN TO A DEALER. THE TECHNICIAN WAS UNABLE

TO DIAGNOSE OR REPAIR THE VEHICLE. THE MANUFACTURER WAS NOTIFIED OF THE ISSUE. THE FAILURE MILEAGE WAS 29,513.

**NHTSA ID Number: 10663117**
**Incident Date April 1, 2014**
**Consumer Location ANDOVER, MN**
**Vehicle Identification Number N/A**
**Summary of Complaint**
TL* THE CONTACT OWNS A 2011 FORD EDGE. THE CONTACT STATED THAT AFTER ATTEMPTING TO CLOSE THE FRONT DRIVERS SIDE DOOR, THE DOOR AJAR WARNING LIGHT ILLUMINATED AND THE INTERIOR LIGHTS REMAINED ILLUMINATED. THE FAILURE OCCURRED ON NUMEROUS OCCASIONS. THE VEHICLE WAS TAKEN TO THE DEALER, WHO DIAGNOSED THAT THE DOOR LATCH FAILED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 45,000. THE VIN WAS NOT AVAILABLE.

**NHTSA ID Number: 10630180**
**Incident Date August 29, 2014**
**Consumer Location INTERNATIONAL FALLS, MN**
**Vehicle Identification Number 2FMDK4JCXBB****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2011 FORD EDGE. THE CONTACT STATED THAT THE DOOR AJAR WARNING INDICATOR ILLUMINATED WHEN ALL THE DOORS WERE CLOSED. THE INTERIOR LIGHTING ILLUMINATED AND CAUSED THE VEHICLE'S BATTERY TO LOSE POWER. THE FAILURE OCCURRED ON MULTIPLE OCCASIONS. THE DEALER STATED THAT THE ELECTRONIC SENSOR ON THE DOOR LATCH NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED AND THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 50,000.

**2012 Ford Edge**

**NHTSA ID Number: 10594599**
**Incident Date May 10, 2014**
**Consumer Location MURRELLS INLET, SC**
**Vehicle Identification Number 2FMDK3GC5CB****
**Summary of Complaint**

TL* THE CONTACT OWNS A 2012 FORD EDGE. THE CONTACT STATED THAT THE DOOR LATCH SWITCH FAILED TO ENGAGE AND THE DOOR AJAR WARNING LIGHT WOULD ILLUMINATE WHEN THE DOOR WAS ACTUALLY CLOSED. ADDITIONALLY, THE DOORS WOULD INDEPENDENTLY BECOME UNLATCHED. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER, WHO DIAGNOSED THAT THE DOOR LATCH SWITCH NEEDED TO BE CLEANED AND/OR REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 43,000.

**NHTSA ID Number: 10620844**
**Incident Date June 2, 2014**
**Consumer Location KANSAS CITY, MO**
**Vehicle Identification Number 2FMDK3G96CB****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2012 FORD EDGE. THE CONTACT STATED THAT THE DOOR AJAR WARNING LIGHT REMAINED ILLUMINATED AND THE DOOR AJAR CHIME WOULD NOT DISABLE. THE CONTACT ALSO STATED THAT THE POWER LATCHS FAILED TO FUNCTION PROPERLY. AN INDEPENDENT MECHANIC DIAGNOSED THAT THE LATCH ON THE DOORS NEEDED TO REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 36,000.

**NHTSA ID Number: 10713011**
**Incident Date March 2, 2015**
**Consumer Location YORK, SC**
**Vehicle Identification Number N/A**
**Summary of Complaint**
A FAULT IN THE DOOR LATCH ON THE DRIVERS SIDE IS MALFUNCTIONING AND SENDS A SIGNAL THAT THE DOOR IS OPEN WHEN IT IS NOT. BESIDES BEING ANNOYING, I FEAR THE FACT THAT THE DOORS DO NOT LATCH WHILE THE VEHICLE IS IN MOTION. THEY COULD BE LATCHED MANUALLY, BUT I HAVE TWO SMALL CHILDREN THAT CAN NOT LATCH THEM ON THEIR OWN. I FEAR THAT IF WE WERE IN AN ACCIDENT, THEY COULD BE THROWN FROM THE CAR DUE TO NOT HAVING THE DOORS LATCHED. AT THIS POINT I DO NOT EVEN WANT TO DRIVE MY CHILDREN ANYWHERE IN THIS VEHICLE. IT IS A SAFETY ISSUE! *TR

**NHTSA ID Number: 10679830**
**Incident Date December 31, 2014**
**Consumer Location LANCASTER, CA**
**Vehicle Identification Number 2FMDK3JC5CB****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2012 FORD EDGE. THE CONTACT STATED
THAT THE FRONT DRIVER AND REAR DRIVER SIDE DOOR'S WERE
INOPERABLE. THE VEHICLE WAS TAKEN TO A DEALER, WHO
DIAGNOSED THAT THE SENSOR LATCHES NEEDED TO BE REPLACED.
THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT
NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE
WAS 39,000.

**NHTSA ID Number: 10701899**
**Incident Date August 7, 2013**
**Consumer Location SOUTH WINDSOR, CT**
**Vehicle Identification Number 2FMDK4GC9CB****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2012 FORD EDGE. WHILE DRIVING 5 MPH,
THE FRONT DRIVER SIDE AJAR WARNING INDICATOR REMAINED
ILLUMINATED AND A CHIME SOUNDED EVEN THOUGH THE DOOR
WAS CLOSED SECURELY. THE CONTACT MENTIONED THAT WHEN
THE FAILURE OCCURRED, ALL FOUR POWER DOOR LATCHS FAILED
TO OPERATE. THE VEHICLE WAS TAKEN TO AN INDEPENDENT
MECHANIC WHO REPLACED THE FRONT DRIVER SIDE DOOR LATCH.
ONE YEAR LATER, THE FAILURE RECURRED. THE VEHICLE WAS NOT
REPAIRED FOR THE MOST RECENT FAILURE. THE MANUFACTURER
WAS NOTIFIED. THE APPROXIMATE FAILURE MILEAGE WAS 37,000.
UPDATED 5/1815*CN

**NHTSA ID Number: 10851871**
**Incident Date March 30, 2015**
**Consumer Location ATWATER, OH**
**Vehicle Identification Number 2FMDK4JC2CB****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2012 FORD EDGE. THE CONTACT STATED
THAT WHILE IN PARK, THE DOOR AJAR WARNING LIGHT
ILLUMINATED. THE FAILURE RECURRED ON NUMEROUS OCCASIONS.
THE VEHICLE WAS TAKEN TO A DEALER WHO DIAGNOSED THAT THE
DOOR LATCH AND THE SWITCH NEEDED TO BE REPLACED. THE

VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 33,000. THE VIN WAS UNAVAILABLE. UPDATED 05/10/16*LJ

**NHTSA ID Number: 10733634**
**Incident Date September 14, 2014**
**Consumer Location LIBBY, MT**
**Vehicle Identification Number N/A**
**Summary of Complaint**
TL* THE CONTACT OWNS A 2012 FORD EDGE. WHILE THE VEHICLE WAS PARKED, THE FRONT DRIVER SIDE DOOR WARNING LIGHT ILLUMINATED, INDICATING THE DOOR WAS OPEN WHEN IT WAS SECURELY CLOSED. THE FAILURE RECURRED CONSTANTLY. THE DEALER DIAGNOSED THAT THE DOOR LATCH NEEDED TO BE REPLACED. THE VEHICLE WAS SERVICED, BUT THE REMEDY FAILED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VIN WAS UNKNOWN. THE FAILURE MILEAGE WAS 33,000.

**NHTSA ID Number: 10749858**
**Incident Date August 11, 2015**
**Consumer Location STERLING HEIGHTS, MI**
**Vehicle Identification Number 2FMDK3GC4CB****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2012 FORD EDGE. THE CONTACT STATED THAT THE DRIVER SIDE DOOR AJAR WARNING LIGHT ILLUMINATED WHILE THE DOOR WAS CLOSED. THE CONTACT MENTIONED THAT THE DOORS ONLY LATCHED MANUALLY. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 21,000.

**NHTSA ID Number: 10776428**
**Incident Date August 10, 2015**
**Consumer Location MUSKEGON, MI**
**Vehicle Identification Number 2FMDK3G98CB****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2012 FORD EDGE. WHILE THE VEHICLE WAS PARKED, THE DRIVER SIDE DOOR LATCH FAILED AND THE DOOR AJAR WARNING INDICATOR SOUNDED. THE CONTACT STATED THAT IT TOOK SEVERAL ATTEMPTS TO CLOSE THE DOOR; HOWEVER, THE FAILURE PERSISTED. THE FAILURE RECURRED ON SEVERAL

OCCASIONS WHILE DRIVING AT VARIOUS SPEEDS. THE VEHICLE WAS
TAKEN TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE
DRIVER SIDE DOOR LATCH WAS FAULTY AND NEEDED TO BE
REPLACED. THE VEHICLE WAS REPAIRED. THE MANUFACTURER WAS
MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE
MILEAGE WAS 26,600.

**NHTSA ID Number: 10780503**
**Incident Date September 24, 2015**
**Consumer Location LIBERTY, NC**
**Vehicle Identification Number 2FMDK3JC4CB\*\*\*\***
**Summary of Complaint**
TL\* THE CONTACT OWNS A 2012 FORD EDGE. WHILE DRIVING AT
APPROXIMATELY 55 MPH, THE DRIVER SIDE DOOR AJAR WARNING
LIGHT ILLUMINATED AND ALL THE DOORS UNLATCHED WITHOUT
ACTIVATION. A WARNING FROM THE INSTRUMENT CLUSTER
INDICATED THAT THE CONTACT SHOULD PARK AND SHUT THE
VEHICLE OFF. THE CONTACT MENTIONED THAT THE VEHICLE WAS
ABLE TO RESTART BUT THE FAILURE RECURRED. THE VEHICLE WAS
TAKEN TO A DEALER WHERE IT WAS DIAGNOSED THAT THE DOOR
LATCH NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED. THE
MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE
APPROXIMATE FAILURE MILEAGE WAS 66,000. THE VIN WAS NOT
AVAILABLE. UPDATED 1/19/16 LN

<u>**2013 Ford Edge**</u>

**NHTSA ID Number: 10669887**
**Incident Date October 30, 2014**
**Consumer Location DRAPERR, UT**
**Vehicle Identification Number 2FMDK4KC2DB\*\*\*\***
**Summary of Complaint**
DRIVER DOOR LATCH SENSOR DOES NOT RECOGNIZE THAT DOOR IS
CLOSED. STARTED AS INTERMITTENT PROBLEM NOW ALARM IS ON
ALL THE TIME. CAN HEAR SWITCH CLICK WHEN MANUALLY
OPERATED BUT DOOR AJAR ALARM WILL NOT GO OUT. THIS
PREVENTS VARIOUS OTHER THINGS FROM OPERATING PROPERLY
INCLUDING SAFETY FEATURES. THIS IS OBVIOUSLY A DEFECTIVE
PART THAT FORD HAS INSTALLED IN MANY OF THEIR VEHICLES.
EVERY WHERE I TURN THERE ARE PEOPLE COMPLAINING ABOUT

THIS SAME PROBLEM. MOST OF THESE CARS ARE NOT EVEN 2 YEARS OLD. *TR

**NHTSA ID Number: 10664399**
**Incident Date May 22, 2014**
**Consumer Location BLOOMINGDALE, IL**
**Vehicle Identification Number 2FMDK3JC4DB****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2013 FORD EDGE. THE CONTACT STATED THAT THE SENSOR ON THE DOOR LATCH FAILED TO DETECT THAT THE DOOR WAS CLOSED IN ORDER TO LATCH THE DOORS. THE CONTACT MENTIONED THAT THE FRONT DRIVERS SIDE DOOR NEEDED TO BE OPENED AND CLOSED MULTIPLE TIMES FOR THE SENSOR TO DETECT THE DOORS. THE FAILURE OCCURRED ON SEVERAL OCCASIONS. THE VEHICLE WAS TAKEN TO THE DEALER, WHO DIAGNOSED THAT THE LATCH ASSEMBLY NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 30,000. UPDATED 2/3/15*CN

THE CONSUMER STATED FORD PAID FOR THE ENTIRE REPAIR. UPDATED 02/18/15*JB

**NHTSA ID Number: 10726644**
**Incident Date June 15, 2015**
**Consumer Location LEXINGTON, NC**
**Vehicle Identification Number 2FMDK3KC9DB****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2013 FORD EDGE. UPON STARTING THE VEHICLE, THE DOORS WOULD NOT LATCH AND THE DOOR AJAR WARNING LIGHT ILLUMINATED ON THE INSTRUMENT PANEL. THE DRIVER SIDE DOOR WAS NOT LATCHED. THE FAILURE OCCURRED EVERY TIME THE CONTACT ENTERED THE VEHICLE. THE VEHICLE WAS TAKEN TO A DEALER, BUT WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 47,000.

**NHTSA ID Number: 10860105**
**Incident Date January 1, 2016**
**Consumer Location MILWAUKEE, WI**

**Vehicle Identification Number 2FMDK4KC2DB\*\*\*\***
**Summary of Complaint**
TL\* THE CONTACT OWNS A 2013 FORD EDGE. WHILE THE VEHICLE
WAS PARKED, THE DOOR AJAR WARNING LIGHT ILLUMINATED
WHEN THE DOOR WAS PROPERLY CLOSED. THE FAILURE OCCURRED
CONSTANTLY. THE VEHICLE WAS DIAGNOSED NOR REPAIRED. THE
CONTACT STATED THAT THE VIN WAS NOT INCLUDED IN NHTSA
CAMPAIGN NUMBER: 15V246000(LATCHES/LATCHS/LINKAGES). THE
MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE
MILEAGE WAS 65,000. ..UPDATED 05/19/16 \*BF

**NHTSA ID Number: 10762870**
**Incident Date July 31, 2015**
**Consumer Location LONG BEACH, CA**
**Vehicle Identification Number 2FMDK3JC3DB\*\*\*\***
**Summary of Complaint**
TL\* THE CONTACT OWNS A 2013 FORD EDGE. THE CONTACT STATED
THAT THE REAR DOOR AJAR LIGHT ILLUMINATED CAUSING THE
DOORS NOT TO BE ABLE TO LATCH OR UNLATCH AUTOMATICALLY.
THE INTERIOR LIGHTS ALSO REMAINED ILLUMINATED, CAUSING THE
BATTERY TO FAIL PREMATURELY. THE VEHICLE WAS TAKEN TO THE
DEALER WHERE A FAILURE CODE WAS LOCATED AT THE REAR DOOR
LATCHS. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER
WAS NOT NOTIFIED. THE FAILURE MILEAGE WAS 40,000.

**NHTSA ID Number: 10631273**
**Incident Date September 6, 2014**
**Consumer Location BETHEL, CT**
**Vehicle Identification Number N/A**
**Summary of Complaint**
THE DRIVER'S SIDE DOOR LATCH ASSEMBLY HAD TO BE REPLACED
BECAUSE THE SENSOR ALWAYS INDICATED THE DOOR WAS OPEN,
SOUNDING THE CHIME, WHEN THE DOOR WAS CLOSED TIGHT. THE
REPAIR CAME TO THE TUNE OF $422.11 FOR A CAR THAT IS ONLY ONE
YEAR OLD! \*TR

**NHTSA ID Number: 10865254**
**Incident Date December 1, 2015**
**Consumer Location SHREVEPORT, LA**
**Vehicle Identification Number 2FMDK3G94DB\*\*\*\***

**Summary of Complaint**

TL* THE CONTACT OWNS A 2013 FORD EDGE. THE CONTACT STATED THAT THE DOOR AJAR WARNING LIGHT REMAINED ILLUMINATED WHILE THE VEHICLE WAS IN THE DRIVE POSITION. THE VEHICLE WAS TAKEN TO THE DEALER TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT THE DOOR LATCH NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 76,487.

**NHTSA ID Number: 10838886**
**Incident Date February 23, 2016**
**Consumer Location CENTRAL CITY, PA**
**Vehicle Identification Number 2FMDK4JCXDB****
**Summary of Complaint**

TL* THE CONTACT OWNS A 2013 FORD EDGE. WHEN THE VEHICLE WAS STARTED, THE DRIVER SIDE DOOR AJAR WARNING LIGHT REMAINED ILLUMINATED. THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE DOOR LATCH HAD TO BE CHANGED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 42,927. UPDATED 04/06/16*LJ

**NHTSA ID Number: 10807202**
**Incident Date October 8, 2014**
**Consumer Location GRAFTON, OH**
**Vehicle Identification Number 2FMDK4JC0DB****
**Summary of Complaint**

TL* THE CONTACT OWNS A 2013 FORD EDGE. THE CONTACT STATED THAT AFTER THE FRONT DRIVER SIDE DOOR WAS CLOSED, THE DOOR AJAR WARNING LIGHT ILLUMINATED. IN ADDITION, THE CONTACT STATED THAT ALL DOORS FAILED TO LATCH. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHERE IT WAS DIAGNOSED THAT THE LATCH AND THE DOOR AJAR SWITCH NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED. THE CONTACT ALSO MENTIONED THAT THE EXTERIOR LIGHT FAILED TO ILLUMINATE INTERMITTENTLY. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 45,000.

**NHTSA ID Number: 10906122**

**Incident Date August 8, 2016**
**Consumer Location EGG HARBOR, WI**
**Vehicle Identification Number 2FMDK3KC7DB\*\*\*\***
**Summary of Complaint**
TL\* THE CONTACT OWNS A 2013 FORD EDGE. THE CONTACT STATED
THAT THE DOOR AJAR WARNING INDICATOR RANDOMLY FLASHED
AND ALL FOUR DOORS FAILED TO LATCH APPROPRIATELY WHEN
NECESSARY. IN ADDITION, UPON EXITING THE VEHICLE, THE DOME
LIGHT REMAINED ILLUMINATED AND THE CONTACT HAD TO CLOSE
THE DOORS SEVERAL TIMES TO GET THE LIGHT TO DIM. THE
VEHICLE WAS TAKEN TO THE DEALER FOR DIAGNOSTIC TESTING,
BUT NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE
FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 70,000.

**NHTSA ID Number: 10920593**
**Incident Date September 1, 2016**
**Consumer Location YERINGTON, NV**
**Vehicle Identification Number 2FMDK4JC6DB\*\*\*\***
**Summary of Complaint**
TL\* THE CONTACT OWNS A 2013 FORD EDGE. THE CONTACT STATED
THAT THE DOOR AJAR WARNING INDICATOR ILLUMINATED. THE
FAILURE CAUSED THE INTERIOR LIGHTING TO REMAIN
ILLUMINATED. THE CONTACT WAS CONCERNED THAT THE DOORS
COULD OPEN INDEPENDENTLY AND ALSO THAT THE BATTERY
COULD BE DRAINED WHILE THE VEHICLE WAS PARKED FOR AN
EXTENDED PERIOD OF TIME. THE DEALER DIAGNOSED THAT THE
DOOR LATCHES NEEDED TO BE RE-CALIBRATED. THE VEHICLE WAS
NOT REPAIRED. THE CONTACT STATED THAT THE FAILURE WAS
INTERMITTENT. THE MANUFACTURER WAS NOTIFIED OF THE
FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 20,000.

**NHTSA ID Number: 10936597**
**Incident Date June 8, 2016**
**Consumer Location ALCALDE, NM**
**Vehicle Identification Number 2FMDK4JC1DB\*\*\*\***
**Summary of Complaint**
TL\* THE CONTACT OWNS A 2013 FORD EDGE. WHILE THE VEHICLE
WAS STATIONARY, THE DOOR AJAR INDICATOR REMAINED
ILLUMINATED. IN ADDITION, NONE OF THE DOORS WOULD LATCH
WHEN PROMPTED. THE VEHICLE WAS NOT DIAGNOSED OR

REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE
FAILURE. THE FAILURE MILEAGE WAS 86,000.

**NHTSA ID Number: 10883537**
**Incident Date September 21, 2015**
**Consumer Location AURORA, IL**
**Vehicle Identification Number 2FMDK3JC4DB****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2013 FORD EDGE. WHILE DRIVING
APPROXIMATELY 25 MPH, A CHIME SOUNDED AND THE FRONT
DRIVER SIDE DOOR AJAR WARNING INDICATOR ILLUMINATED;
HOWEVER, THE DOOR WAS CLOSED SECURELY. THE FAILURE
OCCURRED WHEN DRIVING AND AFTER THE ENGINE WAS TURNED
OFF. THE DRIVER'S SIDE INTERIOR DOOR WOULD NOT UNLATCH
WHENEVER THE FAILURE OCCURRED AND THE CONTACT HAD TO
EXIT FROM THE FRONT PASSENGER DOOR. THE VEHICLE WAS TAKEN
TO THE DEALER WHERE THE DOOR LATCH SENSOR WAS REPLACED.
THE FAILURE RECURRED TEN MONTHS AFTER THE VEHICLE WAS
SERVICED. THE VEHICLE WAS NOT REPAIRED FOR THE MOST RECENT
FAILURE. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE
APPROXIMATE FAILURE MILEAGE WAS 46,000. UPDATED 09/08/16*LJ

**2015 Ford Edge**

**NHTSA ID Number: 10892188**
**Incident Date August 1, 2016**
**Consumer Location GIBSON, IL**
**Vehicle Identification Number N/A**
**Summary of Complaint**
TL* THE CONTACT OWNS A 2014 FORD EDGE. WHILE DRIVING
VARIOUS SPEEDS, THE DOOR AJAR WARNING LIGHT ILLUMINATED
WITH ALL THE DOORS CLOSED. IN ADDITION, THE INTERIOR
LIGHTING REMAINED ILLUMINATED AND THE DOORS FAILED TO
LATCH. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE
MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE
MILEAGE WAS 100,000. THE VIN WAS NOT AVAILABLE.

**NHTSA ID Number: 10875196**
**Incident Date December 1, 2015**
**Consumer Location BUENA PARK, CA**

**Vehicle Identification Number 2FMDK3JC7DB****
**Summary of Complaint**
ISSUE STARTED LATE LAST YEAR, DOOR AJAR WARNING
LIGHT/AUDIO WARNING COMES ON EVEN THOUGH THE DOOR IS
COMPLETELY CLOSED. DOESN'T ALLOW THE DOOR TO LATCH WHILE
DRIVING AND THE AUDIO WARNER CONSISTENTLY COMES ON
DURING THE DRIVE. THE WARNING COMES ON IMMEDIATELY ONCE
THE CAR IS STARTED AND THE WARNING CONTINUES WHEN THE
CAR COMES TO A STOP AND WHEN IT BEGINS TO ACCELERATE.
WE'VE TAKEN THE CAR WHILE IT WAS UNDER WARRANTLY TO HAVE
THE PROBLEM ADDRESSED. THE DEALER LOOKED AT IT AND
COMMUNICATED THAT THEY'VE HAD THIS ISSUE BEFORE. THE
PROBLEM WAS RESOLVED BUT NOW IT'S BACK AGAIN AFTER MAYBE
4 MONTHS.

**2011 Lincoln MKX**

**NHTSA ID Number: 10850494**
**Incident Date March 17, 2016**
**Consumer Location GAINESVILLE, GA**
**Vehicle Identification Number 2LMDJ6JK8BB****
**Summary of Complaint**
THE DOOR AJAR SENSOR IS MALFUNCTIONING ÇAUSING THE LIGHTS
TO REMAIN ON WHILE DRIVING. THIS PROBLEM HAS PROGRESSIVELY
GOTTEN WORSE TO THE POINT THE INTERIOR LIGHTS STAY ON ALL
THE TIME WHICH IS A DRIVING HAZARD AT NIGHT. THIS IS A
COMMON PROBLEM WITH THE FORD EDGE AND MKX AS IT IS ALL
OVER THE INTERNET. FORD HAS A BULLETIN OUT HOWEVER WILL
NOT COVER COST OF REPLACEMENT.

**NHTSA ID Number: 10924157**
**Incident Date October 20, 2016**
**Consumer Location SUPERIOR, WI**
**Vehicle Identification Number 2LMDJ8JK9BB****
**Summary of Complaint**
2011 LINCOLN MKX - PROBLEM - INTERMITTENT "DRIVER DOOR
AJAR" WARNING SHOWN ON INSTRUMENT CLUSTER - CAUSE DOME
LIGHTS TO ILLUMINATE, AND REPEATED DOOR CLOSING ATTEMPTS
TO END "DOOR A JAR" WARNING. WARNING HAPPENS WHEN
STATIONARY AND / OR IN MOTION, RESULTING IN AN UNPLANNED

STOP. IF DIVING WITH "DOOR AJAR" WARNING, DOORS WILL NOT STAY LATCHED, QUESTIONING IF DOORS ARE REALLY CLOSED. *TR

**NHTSA ID Number: 10863562**
**Incident Date February 9, 2016**
**Consumer Location GUTHRIE, OK**
**Vehicle Identification Number 2LMDJ6JK2BB****
**Summary of Complaint**
THE DRIVER SIDE DOOR AJAR SENSOR IS MALFUNCTIONING ÇAUSING THE LIGHTS TO REMAIN ON WHILE DRIVING. THIS PROBLEM HAS PROGRESSIVELY GOTTEN WORSE TO THE POINT THE INTERIOR LIGHTS STAY ON ALL THE TIME WHICH IS A DRIVING HAZARD AT NIGHT. THIS IS A COMMON PROBLEM WITH THE MKX AS IT IS ALL OVER THE INTERNET. FORD HAS A BULLETIN OUT HOWEVER WILL NOT COVER COST OF REPLACEMENT.

**2012 Lincoln MKX**

**NHTSA ID Number: 10435629**
**Incident Date November 12, 2011**
**Consumer Location WILMETTE, IL**
**Vehicle Identification Number 2LMD J8J K1****
**Summary of Complaint**
THE REAR PASSENGER DOOR LATCH MECHANISM CLOSED WITHOUT THE DOOR ACTUALLY BEING CLOSED. THIS CAUSED A FALSE POSITIVE CONDITION FOR THE "DOOR AJAR" WARNING SYSTEM. I THOUGHT THAT THE DOOR WAS SECURE, HOWEVER THE DOOR WAS IN FACT NOT LATCHED TO THE VEHICLE. MY EIGHT YEAR OLD DAUGHTER WAS SITTING IN THE SEAT. WERE IT NOT FOR THE PERCEPTION OF MY WIFE WHO SUSPECTED THAT THE DOOR WAS INSECURE I WOULD HAVE BEEN DRIVING WITH A DOOR THAT WOULD OPEN WHILE THE CAR WAS MOVING.

THIS FALSE POSITIVE CONDITION IS CAUSED BY THE FACT THAT FORD HAS PLACED THE SENSOR THAT TESTS FOR THE DOOR BEING CLOSED ON THE LATCH MECHANISM RATHER THAN ON THE VEHICLE BODY. AS OUR CIRCUMSTANCES DEMONSTRATE THE SIMPLE FACT OF THE DOOR LATCH BEING CLOSED DOES NOT INSURE THAT THE DOOR IS ACTUALLY SECURED TO THE VEHICLE BODY.

WHILE NO INJURIES OCCURRED IN OUR INCIDENT THE POTENTIAL
FOR A SERIOUS INJURY IS OBVIOUS. HAD THE DOOR ACTUALLY
OPENED MY CHILD MAY HAVE EASILY FALLEN OUT OF A MOVING
VEHICLE. THE DRIVER OF THE CAR MUST KNOW WITH ABSOLUTE
CERTAINTY THAT ALL DOORS ARE TRULY SECURED. TESTING THE
LATCH FOR BEING CLOSED IS NOT A SUFFICIENT TEST FOR THE
CLOSURE OF THE DOORS. *TR

**NHTSA ID Number: 10714547**
**Incident Date April 6, 2015**
**Consumer Location RAINSVILLE, AL**
**Vehicle Identification Number 2LMDJ6JK7CB******
**Summary of Complaint**
AFTER CLOSING THE DRIVERS DOOR THE CAR DETECTS AND SAYS
THE DOOR IS STILL OPEN. AFTER NUMEROUS ATTEMPTS OF CLOSING
THE DOOR...SOMETIMES IT WILL GO OFF. NOW, THE LIGHT STAYS ON
CONSTANTLY. THIS SEEMS TO BE HAPPENING ON THE LINCOLN MKX
AND THE FORD EDGE (SAME TYPE VEHICLE) AND HAS BEEN FOR
YEARS. THIS IS A SAFETY ISSUE AND NEEDS TO BE ADDRESS WITH A
RECALL FOR FORD AND LINCOLN WHICH IS CHARGING CUSTOMERS
UP TO $500.00 IN SOME CASES TO REPAIR THESE FAULTY
SWITCHES/SENSOR. *TR

## 2013 Lincoln MKX

**NHTSA ID Number: 10902983**
**Incident Date August 31, 2016**
**Consumer Location SAN ANTONIO, TX**
**Vehicle Identification Number 2LMDJ6JK0DB******
**Summary of Complaint**
VEHICLE IS STATIONARY. THE DOOR AJAR WARNING LIGHT, AT
TIMES, REMAINS ON WHEN THE DOOR IS CLOSED WHICH AFFECTS
SEVERAL ELECTRICAL COMPONENTS SUCH AS, AUTOMATIC DOOR
LATCHS, ALARM SYSTEM, COURTESY LIGHTS AND OTHER
ELECTRICAL COMPONENTS. THE DOOR HAS TO BE SLAMMED SHUT
SEVERAL TIMES TO MAKE THE WARNING LIGHT GO OFF AND MAKE
THE INOPERABLE COMPONENTS OPERABLE. THE CAUSE OF THIS
PROBLEM APPEARS TO BE A FAULTY DOOR LATCH SWITCH WHICH IS
QUITE COMMON IN SEVERAL FORD/LINCOLN VEHICLES. A RECALL
OF THESE DOOR LATCH SWITCHES SHOULD BE ENTERTAINED.

**NHTSA ID Number: 10861265**
**Incident Date April 25, 2016**
**Consumer Location COLUMBUS, OH**
**Vehicle Identification Number N/A**
**Summary of Complaint**
WHEN THE DOOR IS CLOSED, THE DOOR AJAR LIGHT STAYS ON AND
THE DOORS NEVER LATCH WHILE DRIVING. ALSO THE DOOR CAN BE
CLOSED AND THE DOOR AJAR LIGHT WILL NOT BE ON BUT AT ANY
MOMENT THE DOOR AJAR LIGHT WILL COME ON CAUSING THE
FACTORY ALARM TO GO OFF AT ANY TIME, DAY OR NIGHT. IT HAS
BEEN TO THE DEALERSHIP NUMEROUS TIMES FOR THIS ISSUE SINCE
2013.

### E.  Complaints by Owners of Prior Model Years

**2007 Ford Edge**

**NHTSA ID Number: 10329334**
**Incident Date April 8, 2010**
**Consumer Location PHILADELPHIA, PA**
**Vehicle Identification Number 2FMDK49C67B****
**Summary of Complaint**
TL*THE CONTACT OWNS A 2007 FORD EDGE. WHENEVER THE
CONTACT LATCHED THE DOORS THE LATCHS FAILED TO ENGAGE
AND THE DOORS REMAINED UNLATCHED. THE VEHICLE WAS TAKEN
TO AN AUTHORIZED DEALER TO BE REPAIRED; HOWEVER, THE
FAILURE CONTINUED TO OCCUR. THE CURRENT MILEAGE WAS 15,701.
THE FAILURE MILEAGE WAS 15,464.

**NHTSA ID Number: 10543325**
**Incident Date August 1, 2013**
**Consumer Location YONKERS, NY**
**Vehicle Identification Number 2FMDK49C68B****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2008 FORD EDGE. THE CONTACT STATED
WHILE DRIVING VARIOUS SPEEDS, THE DOORS UNLATCHED
UNEXPECTEDLY AND THE DOOR AJAR LIGHT ILLUMINATED. THE
VEHICLE WAS TAKEN TO A DEALER AND THE MECHANIC STATED
THE DOOR LATCH ASSEMBLY NEEDED TO BE REPLACED. THE

VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE DEFECT. THE FAILURE MILEAGE WAS 67,000. THE CURRENT MILEAGE WAS 68,400. UPDATED 12/23/13*LJ

THE CONSUMER STATED THE DOORS WOULD NOT STAY LATCHED. HE WOULD LATCH THEM, AND THEY WOULD UNLATCH AGAIN. ALSO, THE INTERIOR LIGHTS WOULD STAY ON. THE CONSUMER HAD TO DISCONNECT THE BATTERY. UPDATED 12/24/13

**NHTSA ID Number: 10598214**
**Incident Date June 10, 2014**
**Consumer Location PUYALLUP, WA**
**Vehicle Identification Number 2FMDK49C48B****
**Summary of Complaint**
THE "DRIVER DOOR AJAR" MESSAGE CONTINUES TO GO OFF ON OUR 2008 FORD EDGE. THE DOOR IS SECURELY CLOSED. THE LIGHTS WILL STAY ON FINALLY CAUSING A COMPLETE DRAIN ON OUR BATTERY LAST NIGHT DURING THE NIGHT. THIS IS A BIG SAFETY CONCERN AS THE DOORS DO NOT LATCH SOMETIME UNTIL SEVERAL MILES DOWN THE ROAD. WE COULD ALSO BE LEFT STRANDED SOMEWHERE AS WE NEVER KNOW WHEN IT IS GOING TO HAPPEN. WE GO TO BED ALL LIGHTS ARE OFF AND SOMETIME DURING THE NIGHT THEY COME ON. WE HAVE TRIED SEVERAL SUGGESTIONS REGARDING ENGINE LUBRICANT ON THE PLUNGER, BUT IT IS A TEMP FIX AT BEST. THIS IS A SAFETY PROBLEM. I WOULD LIKE TO HAVE IT FIXED BY FORD. CLEARLY IF YOU DO RESEARCH ON THE INTERNET THIS HAS BEEN A PROBLEM WITH THE FORD EDGES FOR SEVERAL YEARS.

**NHTSA ID Number: 10653963**
**Incident Date November 10, 2014**
**Consumer Location NOT PROVIDING, MN**
**Vehicle Identification Number N/A**
**Summary of Complaint**
THE VEHICLE SAYS "DRIVER DOOR AJAR" AT RANDOM TIMES WHEN THE DOOR ISN'T ACTUALLY OPEN (FROM DOING NOTHING MORE THAN OPENING AND CLOSING THE DOOR, ROLLING DOWN THE WINDOW, LATCHING THE DOORS, ETC.).

WHILE THIS MAY SEEM MORE LIKE A HASSLE THAN A SAFETY ISSUE, IT IS TOO AN ISSUE OF SAFETY. WHEN THE VEHICLE IS IN "DOOR

AJAR" MODE THE DOME LIGHTS COME ON. THIS IS DANGEROUS WHEN DRIVING AT NIGHT. WHEN THE VEHICLE IS IN "DOOR AJAR" MODE, THE CAR WILL NOT LATCH. PEOPLE NEED TO BE ABLE TO LATCH THEIR VEHICLE FOR SAFETY REASONS THAT I PROBABLY DON'T NEED TO SPELL OUT.

I'VE READ A FEW FORD FORUMS, WITH NUMEROUS PEOPLE DISCUSSING THIS SAME ISSUE. WHY HASN'T THEIR BEEN A RECALL TO ADDRESS THIS? *TR

**NHTSA ID Number: 10669295**
**Incident Date December 19, 2014**
**Consumer Location SHOREVIEW, MN**
**Vehicle Identification Number 2FMDK48C98B****
**Summary of Complaint**
THE DRIVER DOOR AJAR WARNING IS ILLUMINATED ON THE DASH AND THE DOOM LIGHTS WONT TURN OFF. I HAVE FOUND OUT THIS IS A VERY COMMON ISSUE WITH FORDS WHERE THE POORLY DESIGNED DOOR LATCH BINDS UP. I HAD THIS SAME ISSUE WITH MY 2002 EXPLORER AND NOW WITH MY 2008 EDGE. IT BECOMES A HUGE SAFETY ISSUE AT NIGHT SINCE THE DOME LIGHTS WILL NOT TURN OFF SO IT IS HARD TO SEE OUTSIDE AND COULD POTENTIALLY CAUSE AN ACCIDENT. FROM WHAT I CAN TELL I HAVE BEEN LUCKY TO GET THIS FAR BEFORE THIS ISSUE HAS SURFACED SINCE I HAVE READ THAT FORD CARS 2 TO 3 YEARS OLD SEEM TO HAVE THIS VERY SAME ISSUE. *JS

**2009 Ford Edge**

**NHTSA ID Number: 10919783**
**Incident Date October 1, 2016**
**Consumer Location OGDEN, UT**
**Vehicle Identification Number 2FMDK49C89B****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2009 FORD EDGE. THE CONTACT STATED THAT THE FRONT PASSENGER DOOR SENSOR ERRONEOUSLY INDICATED THAT THE DOOR WAS OPEN, WHICH CAUSED THE INTERIOR LIGHTING AND EXTERIOR MIRROR LIGHTS TO REMAIN ILLUMINATED WHILE DRIVING. THE CAUSE OF THE FAILURE WAS NOT DIAGNOSED. THE VEHICLE WAS NOT REPAIRED. THE

MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE
MILEAGE WAS 65,000.

**NHTSA ID Number: 10861384**
**Incident Date April 24, 2016**
**Consumer Location ARLINGTON, TX**
**Vehicle Identification Number 2FMDK39C09B****
**Summary of Complaint**
THE PASSENGER DOOR AJAR LIGHTSTAYS ON AND WON'T GO OFF
AND THE DOORS WILL NOT LATCH. THIS HAPPENS WHEN I START MY
CAR , DRIVE MY CAR AND WILL ONLY GO OFF WHEN I TURN OFF THE
ENGINE. IN MY OPINION THIS CONSTITUTES A MAJOR SAFETY
HAZARD WHAT WITH THE DOORS NOT LATCHING.

**2010 Ford Edge**

**NHTSA ID Number: 10849855**
**Incident Date January 28, 2016**
**Consumer Location FAIRFIELD, OH**
**Vehicle Identification Number 2FMDK3JC7AB****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2010 FORD EDGE. WHILE DRIVING 35 MPH,
THE INTERIOR LIGHT ILLUMINATED INDEPENDENTLY AND THE
FRONT DRIVER DOOR AJAR LIGHT ILLUMINATED WHEN THE DOOR
WAS PROPERLY CLOSED. THE FAILURE RECURRED INTERMITTENTLY.
THE VEHICLE WAS NOT DIAGNOSED NOR REPAIRED. THE
MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE
MILEAGE WAS 52,000.

**NHTSA ID Number: 10920210**
**Incident Date October 17, 2012**
**Consumer Location CLINTON, IN**
**Vehicle Identification Number 2FMDK3KC6CB****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2010 FORD EDGE. WHILE DRIVING AT AN
UNKNOWN SPEED, THE DOOR AJAR WARNING INDICATOR
ILLUMINATED. THE FAILURE RECURRED ON NUMEROUS OCCASIONS.
THE DEALER DIAGNOSED THAT A LATCH IN THE FRONT DRIVER'S
SIDE DOOR NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED,

BUT THE FAILURE PERSISTED. THE MANUFACTURER WAS NOT
NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 30,000.

**2009 Lincoln MKX**

**NHTSA ID Number: 10712366**
**Incident Date April 6, 2015**
**Consumer Location HARPER WOODS, MI**
**Vehicle Identification Number 2LMDU88C69B\*\*\*\***
**Summary of Complaint**
TL\* THE CONTACT OWNS A 2009 LINCOLN MKX. THE CONTACT
STATED THAT THE AUTOMATIC RELEASE BUTTON FAILED TO
RESPOND. IN ADDITION, THE CONTACT STATED THAT THE DOOR
AJAR WARNING LIGHT ILLUMINATED AND THERE WERE NO DOORS
OPENED. THE CONTACT ALSO NOTICED THAT THE TRUNK DOOR WAS
NOT AUTO RELEASING UPON COMING DOWN AND WHICH COULD
CAUSE AN INJURY. THE VEHICLE WAS NOT DIAGNOSED OR
REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE.
THE APPROXIMATE FAILURE MILEAGE WAS 115,000.

## VI.   CLASS ACTION ALLEGATIONS

65.    Plaintiff brings this action as a class action pursuant to Federal Rule of

Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the following class:

> **The Nationwide Class:**
> All persons or entities in the United States who are current or former
> owners and/or lessees of a Class Vehicle

66.    Alternatively, Plaintiff proposes the following state-specific sub-class:

> **The Michigan Class:**
> All persons or entities in Michigan who are current or former owners
> and/or lessees of a Class Vehicle

67.    Excluded from the Classes are Defendant, its affiliates, employees,

officers and directors, persons or entities that purchased the Class Vehicles for

resale, and the Judge(s) assigned to this case.  Plaintiff reserves the right to modify, change, or expand the Class definition.

68.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

69.    This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

70.    **Numerosity of the Class (Federal Rule of Civil Procedure 23(a)(1))** – The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes that hundreds of thousands of Class Vehicles were sold.  The number and identity of Class Members can be obtained through business records regularly maintained by Defendant, its employees, and agents.  Members of the Class can be notified of the pending action by e-mail and mail, supplemented by published notice, if necessary.

71.    **Commonality and Predominance (Federal Rule of Civil Procedure 23(a)(2))** – There are questions of law and fact common to the Class. These questions predominate over any questions only affecting individual Class members.  The common legal and factual issues include, but are not limited to:

a.  Whether Defendant engaged in the conduct alleged herein;

b.  Whether Defendant designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

c.  Whether Defendant designed, manufactured, marketed, distributed, leased, sold or otherwise placed Class Vehicles into the stream of commerce in the United States knowing the door latching system was prone to malfunction;

d.  When Defendant learned of the Door Latch Defect;

e.  Whether Defendant concealed the Door Latch Defect from consumers;

f.  Whether Plaintiff and other Class members have been harmed by the fraud alleged herein;

g.  Whether Defendant was unjustly enriched by its deceptive practices;

h.  Whether Plaintiff and members of the class are entitled to equitable relief in the form of rescission of the purchase agreement or other injunctive relief and, if so, in what amount.

72.  **<u>Typicality (Federal Rule of Civil Procedure 23(a)(3))</u>** – The claims of Plaintiff are typical of the claims of each member of the Class.  Plaintiff Roger Kinnunen, like all other members of the Class, has sustained damages arising from

Defendant's conduct as alleged herein. The representative Plaintiff and the members of the Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendant.

73. **Adequacy (Federal Rule of Civil Procedure 23(a)(4))** – Plaintiff Roger Kinnunen will fairly and adequately represent and protect the interests of the Class members and has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between the claims of Plaintiff Roger Kinnunen and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class members.

74. **Superiority (Federal Rule of Civil Procedure 23(b)(3))** - This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3), because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class and a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct. Further, it would be virtually impossible for the members of the Class to individually redress effectively the

wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

75. Plaintiff Roger Kinnunen contemplates the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action. Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, Plaintiff would contemplate the use of additional media and/or mailings.

# VII.   VIOLATIONS ALLEGED

## COUNT I

**VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT ("MCPA")**
**(On Behalf of the Nationwide Class or, Alternatively, the Michigan Sub-Class)**

76.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

77.     Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the Class against Defendant.

78.     The Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.901, *et seq.*, is designed to provide a remedy for consumers who are injured by deceptive business practices. The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." MCL § 445.903.

79.     The MCPA expressly allows for class actions on behalf of consumers who have suffered a loss as a result of a violation of the Act. *See* Mich. Comp. Laws § 445.911(3).

80.     Plaintiff, the Class members, and Defendant Ford are persons under the MCPA.

81.     Plaintiff and the Class Members purchased "goods or services primarily for personal, family or household purposes" as alleged herein.

82.    As discussed in detail herein, by manufacturing and selling the Class Vehicles with the Door Latch Defect, Defendant's conduct constitutes unfair, unconscionable, and deceptive acts because Defendant:

i.    Caused a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services, (Mich. Comp. Laws § 445.903(1)(a));

j.    Represented that Class Vehicles were of a particular standard, grade, or quality, (Mich. Comp. Laws § 445.903(1)(e));

k.    Advertised the Class Vehicles with intent not to sell the Class Vehicles as advertised or represented, (Mich. Comp. Laws § 445.903(1)(g));

l.    Failed to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer, (Mich. Comp. Laws § 445.903(1)(s));

m.   Made representations of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, (Mich. Comp. Laws § 445.903(1)(bb)); and

n.  Failed to reveal facts which are material to the transaction in light of representations of fact made in a positive manner, (Mich. Comp. Laws § 445.903(1)(cc)).

83.    Specifically, as discussed herein, Ford knew, or should have known, it was making representations about the quality and durability of Class Vehicles by marketing, selling, and leasing the vehicles.

84.    Defendant concealed, omitted, and failed to disclose the latent defect in Class Vehicle door latch systems, specifically the Door Latch Defect.

85.    Defendant knew or should have known of the defect at the time of sale.

86.    Defendant owed Plaintiff and the Class Members a duty to disclose the dangers and defective nature of the Class Vehicles.

87.    As shown by their purchase of the Class Vehicle, Plaintiff and the Class reasonably relied on Defendant's misrepresentations and omissions of material facts.  Further, facts surrounding the defect could not have been known to the consumer at the time of purchase or lease, because symptoms of the defect emerged after the Class Vehicle was driven thousands of miles.

88.    As a result of Defendant's unfair, false, misleading, or deceptive acts or practices alleged herein, Plaintiff and the Class Members have suffered an ascertainable loss of money or property in an amount to be determined at trial. This

includes the costs to repair their vehicle any other damage caused to the vehicle due to the Door Latch Defect and any other compensatory or consequential damages allowed by law.

89.     As a direct and proximate result of Defendant's violations of the MCPA, Plaintiff and the Class Members have suffered injuries-in-fact and/or actual damages.

90.     Plaintiff and the Class Members are entitled to recover all such allowable damages, including attorneys' fees.

91.     Plaintiff and the Class Members also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the MCPA.

## COUNT II

### BREACH OF EXPRESS WARRANTY

**(On Behalf of the Nationwide Class or, Alternatively, the Michigan Sub-Class)**

92.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

93.     Defendant expressly warranted that the Class Vehicles were of high quality and, at a minimum, would work properly.  Defendant also expressly warranted that they would repair and/or replace defects in material and/or workmanship free of charge that occurred during the New Vehicle Limited

Warranty and the Service Parts Warranty periods.

94.     Defendant breached this warranty by selling to Plaintiff and Class members the Class Vehicles with known door sensor and door latch assembly problems, which are not of high quality, and which fail prematurely and/or fail to function properly.

95.     As a result of the Defendant's actions, Plaintiff and Class members have suffered economic damages including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

96.     Defendant attempts to disclaim or limit these express warranties vis-à-vis consumers are unconscionable and unenforceable under the circumstances here. Specifically, Defendant's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

97.     The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff and members of the Class. Among other things, Plaintiff and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant.  A gross disparity in bargaining power existed between Ford and Class members, and Ford knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

98.     Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

## COUNT III
## COMMON LAW FRAUD

99.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

100.    Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the Class against Defendant.

101.    Defendant knew or should have known of the defects before or at the time Plaintiff and Class Members purchased their Class Vehicles.

102.    Defendant made material omissions concerning a presently existing or past fact.   For example, Defendant did not fully and truthfully disclose to its customers the true nature of the inherent manufacturing and design defect with the Door Latch Defect, which was not readily discoverable until years later, often not until after the warranty has expired.   As a result, Plaintiff and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the said manufacturing and design defects and all of the resultant problems.

103.    These omissions were made by Defendant with knowledge of their falsity, and with the intent that Plaintiff and Class members rely upon them.

104.    Plaintiff and the Class Members had no knowledge of these defects at

the time they purchased or leased Class Vehicles.

105.   The door latching systems were defective at the time Plaintiff and the Class Members purchased and leased their Class Vehicles.

106.   Defendant had a duty to disclose the true facts about the Door Latch Defect in the Class Vehicles because Defendant had superior knowledge and access to those facts, and the facts were not known to or reasonably discoverable by Plaintiff and the Class Members.

107.   Defendant knew that Plaintiff and the Class Members had no knowledge of the Door Latch Defect and that neither Plaintiff nor the Class Members had an equal opportunity to discover the facts to inform them of those defects. Indeed, Plaintiff and the Class Members trusted Defendant not to sell and to instead recall door latching systems that are defective.

108.   Plaintiff and the Class Members reasonably relied on Defendant's representations that the door latch systems were free from defects and complied with Defendant's representations and warranties.

109.   As a direct and proximate result of Defendant's knowingly false representations, concealment and/or suppression of facts, Plaintiff and the Class Members have sustained and will continue to sustain damages arising from the difference between the actual value of that which Plaintiff and the Class Members paid and the actual value of what they received.

110.    Defendant's acts were done oppressively, deliberately, with intent to defraud, and in reckless disregard of the Plaintiff and Class Members' rights and well-being to enrich the Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

111.    Plaintiff and the Class Members are entitled to recover actual, consequential, and punitive damages, equitable and declaratory relief, costs and reasonable attorneys' fees.

## COUNT IV

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

112.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

113.    Every contract in Michigan contains an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

114.    Defendant breached the covenant of good faith and fair dealing through malicious conduct by, *inter alia*, failing to notify Plaintiff and Class members of the Door Latch Defect in the Class Vehicles, and failing to fully and properly repair this defect.

115.    Defendant acted in bad faith and/or with a malicious motive to deny Plaintiff and Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

1.    For an order certifying this action as a class action;

2.    For an order appointing Plaintiff as representative of the Class and his counsel of record as Class counsel;

3.    For an award of actual, general, special, incidental, statutory, compensatory and consequential damages and in an amount to be proven at trial;

4.    For an award of exemplary and punitive damages in an amount to be proven at trial;

5.    For an order enjoining the wrongful conduct alleged herein;

6.    For costs;

7.    For interest;

8.    For such equitable relief as the Court deems just and appropriate, including but not limited to, rescission; restitution; and disgorgement;

9.    For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

Dated: April 4, 2017

**THE MILLER LAW FIRM, P.C.**

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
950 W. University Dr., Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com

**MᴄCᴜɴᴇ Wʀɪɢʜᴛ Aʀᴇᴠᴀʟᴏ LLP**
Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
555 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581

**MᴄCᴜɴᴇ Wʀɪɢʜᴛ Aʀᴇᴠᴀʟᴏ LLP**
Richard D. McCune
David C. Wright
3281 East Guasti Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250